**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:11-CV-573-RJC-DCK**

| | |
|---|---|
| ALMA P. BENDRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| STATE FARM MUTUAL AUTOMOBILE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Dismiss" (Document No. 2). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

**I. BACKGROUND**

Alma P. Bendrick ("Plaintiff") filed her Complaint (Document No. 1-1) in this action on October 6, 2011 in Mecklenburg County Superior Court, against State Farm Mutual Automobile Insurance Company ("Defendant") alleging claims for breach of contract, unfair and deceptive trade practices, and breach of duty of good faith and fair dealing. (Document No. 1-1). The Complaint seeks unspecified damages in excess of $10,000 for each claim. Id.

The underlying event to this lawsuit was a motor vehicle accident on April 4, 2007, in which Plaintiff's vehicle was struck by a vehicle driven by Beatrice Bowman ("Bowman") and Plaintiff "sustained painful and permanent injuries to her person." Id. Bowman was insured at the time by Integon National Insurance Company ("Integon"), which tendered the limits of its coverage,

$30,000, to Plaintiff.  Id.

Plaintiff then gave notice to Defendant of a claim for underinsured motorist coverage under a policy she purchased from Defendant, and sought the limits of her coverage, $100,000, minus any allowed credits or offsets.  Id.  Defendant conducted an investigation and declined to accept or counter Plaintiff's demand for the policy limits.  Id.  Following Plaintiff's demand for arbitration pursuant to her policy, an arbitration panel determined the value of Plaintiff's case was $120,000.  Id.  Defendant then submitted a check to Plaintiff for $65,000, which represented Plaintiff's $100,000 policy coverage, minus $30,000 from Integon and $5,000 in medical benefits already paid.  Id.  The crux of Plaintiff's Complaint is that she was forced to pursue binding arbitration before Defendant would tender the limits of its coverage.  Id.

On November 10, 2011, Defendant removed the case to this Court.  (Document No. 1). Defendant then filed its pending "Motion To Dismiss" pursuant to Fed.R.Civ.P. 12(b)(6) and supporting memorandum (Document No. 3) on November 17, 2011. (Document No. 2). "Plaintiff's Brief In Opposition To Defendant's Motion To Dismiss" (Document No. 11) was filed on December 8, 2011. "Defendant's Notice Of Intent Not To File a Reply" (Document No. 13) was filed January 3, 2012.  As such, immediate review of the pending motion, and recommendation for disposition to the presiding district judge, is now appropriate.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to

state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendant asserts by its instant motion that all of Plaintiff's causes of action fail to raise the right to relief above the speculative level and should be dismissed pursuant to Rule 12(b)(6). (Document No. 2). The undersigned will examine the legal sufficiency of each of Plaintiff's causes of action.

**A. Breach of Contract**

Under North Carolina law, the central elements of a breach of contract claim are "the existence of a valid contract and a breach of the terms of that contract." PTI Associates, LLC v. Carolina Intern. Sales Co., Inc., 3:10CV108-RJC-DSC, 2011 WL 940725 at *2 (W.D.N.C. Jan. 3, 2011) (quoting Ely Research Inc. v. United Communications Group LLC, 312 F.Supp.2d 748, 755 (M.D.N.C.2004)). Plaintiff contends that "Defendant breached its contract obligation by failing to pay $65,000.00 of underinsured motorist coverage prior to the date of the binding arbitration." (Document No. 1-1, p.6). The Complaint further suggests that Defendant's refusal to make an offer to settle, and submission of a notebook of information to the arbitrators that they declined to consider, supports her claim of a breach. Id. Plaintiff fails to specifically identify any term of the parties' contract that was breached; rather, she broadly concludes that Defendant's failure to pay her claim prior to arbitration was a breach of the parties' agreement. Id.

Defendant argues that "North Carolina does not recognize a breach of contract claim against an insurer based solely on the fact an insured was required to arbitrate their underinsured motorist" ("UIM") claim. (Document No. 3, p.4). Defendant notes that federal district courts in North Carolina have rejected similar claims. Id. (citing Chew v. Progressive Universal Ins. Co., 2010 WL 4338352 (E.D.N.C. Oct. 25, 2010) and Lemons v. Pennsylvania National Mutual Casualty Ins. Co., 2011 WL 2565617 (M.D.N.C. June 28, 2011)).

In Chew, the Eastern District of North Carolina granted summary judgment to the defendant insurer on plaintiff insured's claims for breach of contract, unfair and deceptive trade practices, and breach of covenant of good faith and fair dealing. Chew, 2011 WL 4338352 at *11. That court opined that "North Carolina courts have consistently rejected the view that an insured may sue an insurance company for breach of contract for failure to pay uninsured motorist benefits, instead holding that such actions take the form of a tort against the uninsured motorist, which the insurance

company may defend." Chew, 2011 WL 4338352 at *7 (citing Brown v. Lumbermens Mutual Casualty Co., 285 N.C. 319 (1974). Chew interpreted Brown as suggesting "that a breach of contract action would never be appropriate for this theory of recovery, even under more favorable facts." Chew, 2011 WL 4338352 at *8. In addressing facts similar to those now before this Court, the Chew decision further observed that:

> the policy explicitly provides that an insured party may request arbitration in the event of a disagreement as to the amount of damages owed, which is precisely what happened here. Far from burdening plaintiff, the arbitration provision appears to allow plaintiff to choose arbitration as a less costly alternative to a tort suit against the uninsured motorist. If plaintiff wanted to recover costs and attorney's fees related to this arbitration, which is the relief requested here, it was incumbent on him to make that request in the context of the arbitration proceedings, not in a separate lawsuit for breach of contract.

Chew, 2011 WL 4338352 at *8.

In Lemons, the Middle District of North Carolina granted the defendant insurer's motion to dismiss claims for breach of contract, unfair claims settlement practices under N.C.Gen.Stat. § 58-63-15 (11), and unfair and deceptive trade practices. Lemons, 2011 WL 2565617. The Lemons decision adopted the reasoning in Chew and specifically found it applicable to its decision on a motion to dismiss. Lemons, 2011 WL 2565617 at *3. The Lemons opinion specifically noted that the plaintiff in that case "simply cannot claim damages as a result of submitting his claim to arbitration when (1) he had agreed to do so pursuant to the contract for insurance for the parties and (2) Lemons initiated such arbitration." Lemons, 2011 WL 2565617 at *4.

Relying heavily on Chew and Lemon, Defendant argues that it was never required to make a settlement offer to Plaintiff because it had the right to defend the tort claim, which it did in the arbitration provided for in Plaintiff's policy. (Document No. 3, p.6). As in the above cited cases,

5

Defendant contends that it promptly paid Plaintiff once the arbitrators determined Bowman's liability. Id.

Plaintiff's response to Defendant's motion and memorandum fails to distinguish, or even address, the Chew and Lemons decisions. (Document No. 11). Plaintiff does cite a few older North Carolina Court of Appeals decisions in support of her claims; however, the facts of these cases appear significantly distinguishable and more egregious than the facts alleged by Plaintiff in this case. For example, in Dailey v. Integon, the court opined as follows:

> The evidence supports the conclusion, we think, that defendant's effort to settle plaintiff's claim consisted of requiring him to go to the inconvenience and expense of obtaining qualified, expert estimates defendant had no intention of considering; inordinately delaying both the settlement and plaintiff's return to his usual comforts and amenities of life; and then offering about half the amount owed in anticipation that plaintiff would have neither the will nor the resources to refuse it. More aggravated, oppressive conduct, not involving physical force or personal insult, by one having a duty to relieve financial distress and inconvenience is hard to imagine. But that was not all. Defendant, through its agent Charnock, also told some of plaintiff's friends and neighbors, with no basis whatever, that it had determined that plaintiff had his house burned "for insurance purposes," and "stirred up a lot of hate and discontent" against plaintiff among his neighbors.

Dailey v. Integon, 75 N.C.App. 387, 397 (1985).

Viewing the Complaint in the most favorable light, Plaintiff here asserts at most that: (1) she had to go through arbitration as provided for in her policy; (2) that Defendant requested, but did not require that she sign a release; and (3) Defendant tried to introduce a notebook of evidence that the arbitrators refused to consider. (Document No. 1-1). These facts are readily distinguishable from the circumstances of the Dailey case, and Plaintiff's allegations simply do not describe the kind of aggravating conduct in Dailey and the other cases Plaintiff relies upon for support. (Document No. 11, pp.12-14).

The undersigned does not find that Plaintiff has adequately pled facts to support a plausible claim for breach of contract, or her other claims as will be briefly discussed below. In fact, Plaintiff's opposition to the pending motion fails to articulate any argument that her breach of contract claim should survive. (Document No. 11). Moreover, Plaintiff has failed to refute the Chew or Lemons decisions which appear to present analogous circumstances to those of the instant case and indicate that dismissal is appropriate.

### B. Unfair and Deceptive Trade Practices

Next, Defendant argues that Plaintiff's factual allegations do not reveal a facially plausible unfair and deceptive trade practices ("UDTPA) claim, and that there are no damages she can recover as a result of having to submit her claim to binding arbitration. (Document No. 3, p.8).

> To establish a claim under the UDTPA, N.C.Gen.Stat. § 75-1.1(a), a complainant must show: 1) an unfair or deceptive act or practice, 2) in or affecting commerce 3) which proximately caused injury to plaintiffs. The determination of whether an act or practice is an unfair or deceptive practice is a question of law for the court. **A practice is unfair and deceptive "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers**." Moreover, "where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice."

Blis Day Spa, LLC v. Hartford Ins. Group, 3:04CV231-RJC-DCK, 427 F.Supp.2d 621, 634 (W.D.N.C. 2006) (internal citations omitted) (emphasis added).

Plaintiff's second claim for relief alleges that Defendant engaged in unfair or deceptive acts or practices by: (1) failing "to make any offer whatsoever" prior to binding arbitration; (2) attempting to introduce allegedly hearsay and/or non-relevant information at the arbitration; and/or (3) submitting to the Plaintiff a release of claims. (Document No. 1-1, pp.7-8).

Defendant persuasively argues that none of Plaintiff's allegations present a plausible UDTPA

claim. For instance, Defendant contends that it was not required to make any offers before or after the arbitration, since it had no duty to pay under its policy until such amounts were proven recoverable against Bowman. (Document No. 11, p.3). Defendant notes that as soon as the amounts were proven, it immediately paid Plaintiff.

Plaintiff's response to the pending motion acknowledges several key facts that contradict her allegation that Defendant offended established public policy or engaged in immoral, unethical, oppressive, unscrupulous, or substantially injurious practices. (Document No. 11); see also, Blis, 427 F.Supp.2d at 634. Among the key facts are the following: (1) Plaintiff "demanded binding arbitration under the terms of the policy issued by the Defendant"; (2) the arbitrators deliberated and refused to consider the allegedly hearsay or non-relevant information; and (3) Defendant submitted a check for the policy limits, minus offsets, without requiring Plaintiff to sign the proposed release agreement. (Document No. 11, pp.9-11). Nevertheless, Plaintiff continues to assert that Defendant engaged in unfair claim settlement practices pursuant to N.C.Gen.Stat. § 58-63-15 (11). Id.

The undersigned does not find that Plaintiff's allegations support a plausible UDTPA claim. As discussed above, those cases cited by Defendant's motion support dismissal of this action, and moreover, the facts here do not include "malice, oppression, willfulness and reckless indifference," or "bad faith delay and aggravating conduct," as described in the cases relied upon by Plaintiff and necessary to establish a plausible UDTPA claim.

**C. Breach of Duty of Good Faith And Fair Dealing**

Defendant's motion further asserts that Plaintiff's claim for a breach of the duty of good faith and fair dealing ("bad faith claim") must also be dismissed. (Document No. 3, p.6).

> To prevail on a claim of bad faith in the insurance context, a complainant must establish that there was: 1) a refusal to pay after recognition of a valid claim; 2) "bad faith"; and 3) "aggravating or

8

> outrageous conduct." "'Bad faith' means not based on a legitimate, 'honest disagreement' as to the validity of the claim. 'Aggravated conduct' is defined to include fraud, malice, gross negligence, insult ... willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights."

Blis Day Spa, 427 F.Supp.2d at 631 (internal citations omitted).

Plaintiff's Complaint incorporates its previous allegations and concludes that Defendant "breached its duty of dealing fairly and in good faith." (Document No. 1-1, p.9).

Defendant, relying again on Chew, argues that there is no bad faith here because there was no recognition of a valid claim until the amount Plaintiff could claim was established at the arbitration. (Document No. 3, p.7). Once the valid claim for $65,000 was recognized, Defendant made immediate payment. Id. Defendant concludes, therefore, that there was no bad faith. Id. The undersigned agrees.

The basic facts of this case are simple. The parties disagreed on the amount Plaintiff was entitled to recover as a result of her accident with Bowman, and then pursuant to terms of the policy they executed, they engaged in arbitration to resolve their disagreement. Plaintiff has failed to allege, or even infer, any additional facts that support the elements of a bad faith claim. As such, and based on the reasoning above, the undersigned will respectfully recommend that all Plaintiff's claims be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's "Motion To Dismiss" (Document No. 2) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the

Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: March 6, 2012

David C. Keesler
United States Magistrate Judge